IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARNEY RAY WHITE,<br><br>            Petitioner,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent.<br>_____ | No. CV-F-05-946 REC<br>(No. CR-F-03-5308 REC)<br><br>ORDER GRANTING PETITIONER'S MOTION TO RECALL MOTION TO WITHDRAW SECTION 2255 MOTION (Doc. 38), DENYING SECTION 2255 MOTION (Docs. 29, 33 & 34), AND DIRECTING ENTRY OF JUDGMENT FOR RESPONDENT |

On July 25, 2005, petitioner timely filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.[1]  On August 22, 2005, petitioner filed an Amended

---

[1]Petitioner filed a motion for recall of sentence or modification of sentence on March 25, 2005.  By Order filed on April 7, 2005, the court deemed this motion to be a motion for relief pursuant to Section 2255 and denied the deemed Section 2255 motion.  When petitioner filed the instant Section 2255 motion, the court, by Order filed on August 4, 2005, accepted jurisdiction of the Section 2255 motion because the court had neglected to follow the procedure mandated by United States v. Seesing, 234 F.3d 456 (9th Cir. 2000) when it deemed the motion for recall of sentence or modification of sentence to be a Section 2255 motion.

1

Supplemental Basis for relief under Section 2255.  The court ordered the United States to respond to the Section 2255 motion and the Amended Supplemental Basis for Relief.  On October 13, 2005, petitioner filed a motion to withdraw the Section 2255 motions, which motion was granted by Order filed on October 19, 2005.  Thereafter, the United States filed its response to the Section 2255 motions.  On October 21, 2005, petitioner filed a motion to recall the motion to withdraw the Section 2255 motions.

A.   <u>Motion to Recall Motion to Withdraw Section 2255 Motions</u>.

On October 13, 2005, petitioner Darney Ray White filed a motion to withdraw the Section 2255 motion filed by him on July 25, 2005 as amended on August 22, 2005 "in the interest of justice."  By Order filed on October 19, 2005, the court granted petitioner's motion to withdraw, dismissed the Section 2255 motion, and directed entry of judgment for respondent.

On October 21, 2005, petitioner filed a motion to recall his motion to withdraw the Section 2255 motion.  In his motion to recall his motion to withdraw the Section 2255 motion, petitioner asserts that he filed te motion to withdraw "under duress" because Assistant United States Attorney Rice "sent me threats via Ann Voris" and that AUSA Rice "requested Ann Voris, relay to me that, if I don't withdraw my 2255 ... I would be returned to court to be resentenced as a career criminal."  Attached to petitioner's motion to recall his motion to withdraw is a copy of a letter dated September 20, 2005 from AUSA Rice to Assistant

1   Federal Defender Ann Voris, who represented petitioner in the

2   underlying criminal action.  AUSA Rice's letter states:

3           Greetings.  Enclosed is a 2255 motion filed
            by your client, Mr. White, in breach of the
4           plea agreement provision waiving his right to
            file a 2255 motion.  Basically, he asserts
5           that you misled him while he was on
            medication in order to get him to plead
6           guilty.  His assertion is obviously false
            based on the plea colloquy and having known
7           you for many years, but the Court has
            nonetheless ordered the government to respond
8           by October 11, 2005.

9           Interestingly, in looking at Mr. White's
            criminal history again and after doing some
10          legal research, it appears that he should
            have been sentenced as a Career Offender
11          under U.S.S.G. § 4B1.2.  He has a 1988 HS
            11366 felony conviction for maintaining a
12          place for drug sales in San Diego County
            Superior Court #93564, a 1993 PC 487.2 felony
13          conviction for grand theft person in San
            Diego County Superior Court #133569, and a
14          2001 PC 243 conviction for felony battery on
            a peace officer in Monterey County Superior
15          Court # SS001497A.  See Commentary to § 4B1.2
            Application Note 1 - maintaining any place
16          for purpose of facilitating a drug
            trafficking offense is a controlled substance
17          offense; United States v. Robinson, 967 F.2d
            287, 293-94 (9th Cir.1992)(battery on a peace
18          officer is a crime of violence); United
            States v. Wofford, 1997 WL 226195 (9th Cir.,
19          May 7, 1997)(grand theft person is a crime of
            violence).  His advisory guideline range
20          should have been, even after reduction for
            acceptance of responsibility, 151-188 months.
21          He was sentenced to 77 months.

22          I have not yet decided whether to oppose his
            2255 motion, or take advantage of his breach
23          of the plea agreement and seek resentencing
            under the Career Offender guideline section.
24          In any event, as a courtesy, I thought I
            would alert you to the situation, so that if
25          you wish you can discuss the situation with
            Mr. White.

26

                                3

1               Please let me know at your earliest
                 convenience whether Mr. White intends to

2               proceed with his 2255 motion or withdraw it,
                 or if you decide not to talk to him, so that

3               I can make a decision and advise the Court.

4  Also attached to petitioner's motion to recall the motion to

5  withdraw is a copy of a letter dated September 22, 2005 from Ms.

6  Voris to petitioner, in which Ms. Voris states:

7               Enclosed is a copy of correspondence received
                 by this office from the Assistant United

8               States Attorney regarding the § 2255 motion
                 which you filed with the court.  A copy of

9               your motion is also attached to his letter.

10              Please review Mr. Rice's letter carefully and
                call me as soon as possible so that we may

11             discuss how you wish to proceed and how best
                to protect your interests.  You may call this

12             office collect.

13     Nothing in these letters substantiates petitioner's

14  contentions that he moved to withdraw his Section 2255 motion

15  because of duress or that these letters demonstrate collusion

16  between AUSA Rice and Assistant Federal Defender Voris.  AUSA

17  Rice was advising Ms. Voris, as petitioner's defense in the

18  underlying criminal proceeding, of his positions concerning the

19  Section 2255 motion and the possible consequence to petitioner if

20  his Section 2255 motion were granted.  Ms. Voris properly

21  transmitted Mr. Rice's letter to petitioner and requested that he

22  communicate with Ms. Voris concerning Mr. Rice's letter.  There

23  is nothing inappropriate, unprofessional or collusive in these

24  events.  Therefore, to the extent that petitioner seeks to set

25  aside the motion to withdraw his Section 2255 motion and the

26  court's Order granting that motion on these grounds, the court

rules that petitioner's contentions are without merit.

Nonetheless, because the briefing on petitioner's Section 2255 motion is complete and in the interest of justice, the court will grant petitioner's motion to recall his motion to withdraw the Section 2255 motion and vacate the Order granting the motion to withdraw the Section 2255 motion, thereby considering the merits of the claims asserted in the Section 2255 motion filed by him on July 25, 2005 as amended on August 22, 2005.

B.   Motions to Vacate, Set Aside or Correct Sentence.

In the Section 2255 motion filed on July 25, 2005, petitioner raises three grounds for relief.

As Ground One, petitioner asserts that the plea agreement is "inadmissible" because it was misrepresented to petitioner by defense counsel.  Petitioner contends:

> Defendant was on psychiatric meds at the time he signed to plea agreement.  Defendant's attorney told defendant that she would remove him giving up his right to appeal, and did not inform him that he would be giving up his right to challenge any part of his conviction.  Defendant also was not cleared by a psychiatric doctor, that he was making a sane decision.  The court did not inform defendant that they had to consider guidelines, but may depart from them under some circumstances by law.  And those circumstances apply to this defendant.

As Ground Two, petitioner asserts that he "was not cleared as competent by a doctor".  Petitioner contends:

> At one point in the case, the court considered sending defendant to mental hospital for evaluation, due to his privious [sic] mental, and present, mental conditions.  Defendant was not cleared competent to stand

5

> trial by a doctor, at the time he signed his
> plea agreement, or after.  The doctor he did
> see, recommended a downward departure, due to
> defendant's mental condition, at the time of
> the crime, and at the time of the court
> proceedings.  Defendant's attorney held back
> the true facts of ths agreement from
> defendant.

As Ground Three, petitioner asserts that he "never believed he was giving up his right to appeal".  Petitioner contends:

> When Defendant signed the deal for lower
> term, defendant was told by court appointed
> counsel that she would make sure that he
> would not give up his right to appeal, if he
> signed the deal.  Also the defendant was
> medicated, when he signed the deal, and
> trusted his counsel.

In his amended Section 2255 motion filed on August 22, 2005, petitioner asserts additional grounds for relief.

As Ground Four, petitioner refers to conditional plea agreements in which a defendant may enter a conditional plea of guilty, reserving the right to appeal specified issues. Petitioner asserts:

> Due to the many conditional plea violations,
> this defendant is entitled to have his plea
> withdrawn in the interest of justice, but
> would consider to dismiss that thought if I
> am given the requested downward departure.

As Ground Five, petitioner asserts that the court did not follow the "requirement of disclosure in open court" at the time of the change of plea and that "due to his medicated state, the defendant was clearly taken advantage of by all parties."

As Ground Six, petitioner contends that he is entitled to withdraw his guilty plea if he can show a fair and just reason

for requesting withdrawal and that petitioner "is positive that he meet [sic] this standard of proof."

As Ground Seven, petitioner, referring to <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969), holding that a defendant must be apprised of the constitutional rights a defendant is relinquishing by pleading guilty, asserts:

> The defense [sic] contends that the wording of the plea agreement was manufactured by court appointed counsel in this matter, to get the defendant to sign an agreement opposite of what she presented, and to be rid of a difficult defendant, who was trying to find out all aspects of the investigation by her investigator, who never did any such thing, and trying to find out who was the employee of Twining Laboratories who collected evidence with a bank employee, that may have contaminated major evidence that identify the defendant, that may have been inadmissible.

Petitioner was charged with armed bank robbery in violation of 18 U.S.C. § 2113(a).  Petitioner pleaded guilty pursuant to a written Plea Agreement.  In pertinent part, the Plea Agreement set forth the maximum sentence, fine and term of supervised release that could be imposed on petitioner.  The Government agreed to recommend that defendant be sentenced at the low end of the applicable guideline range and to recommend that defendant receive a three level reduction in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1.  The Plea Agreement specifically provided:

> The defendant understands that a sentencing guideline range for this case will be determined by the Court pursuant to the Sentencing Reform Act of 1984 (18 U.S.C. §§

3551-3742 and 28 U.S.C. §§ 991-998).  The
defendant further understands that the Court
will impose a sentence within that guideline
range, unless the Court finds that there is a
basis for departure (either above or below
the range) because there exists an
aggravating or mitigating circumstance of a
kind, or to a degree, not adequately taken
into consideration by the Sentencing
Commission in formulating the guidelines.

The Plea Agreement further provided:

The defendant understands that the law gives
him a right to appeal his conviction and
sentence.  He agrees as part of his plea,
however, to give up this right so long as his
sentence is consistent with the agreement set
forth above.

The defendant also gives up any right he may
have to bring a post-conviction attack on his
conviction or his sentence.  He specifically
agrees not to file a motion under 28 U.S.C. §
2255 or § 2241 attacking his conviction or
sentence.

The Plea Agreement set forth the factual basis upon which

petitioner would plead guilty:

On July 16, 2003, the defendant robbed the
Bank of America at 2513 Fresno Street in
Fresno, in the State and Eastern District of
California.  A demand note was presented to
the teller that said he would shoot her if
she did not give him the money.  The teller
gave the defendant $6,039, including a dye
pack.  When the defendant exited the bank,
the dye pack exploded.  The defendant dropped
the money, demand note and his Visa Gold
Check Card.  Good quality surveillance photos
were obtained which match the defendant, and
the defendant's fingerprints were found on
the demand note.  The teller and another
witness also identified defendant's photo
from a photo lineup as the robber.  The
deposits of the bank were FDIC insured at the
time of the robbery.

Petitioner signed the following approval at the conclusion of the

8

Plea Agreement:

>I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines which may apply to my case.  No other promises or inducements have been made to me, other than those contained in this Agreement.  In addition, no one has threatened or forced me in any way to enter into this Plea Agreement.  Finally, I am satisfied with the representation of my attorney in this case.

During the change of plea proceedings on June 21, 2004, petitioner was sworn under oath.[2]  After being sworn, petitioner advised the court that he had fully read the Plea Agreement; that he had talked the Plea Agreement over with Ms. Voris; that everything in the Plea Agreement was true; that he was pleading guilty because he was in fact guilty; and that he had not had any drugs, alcoholic beverages, or medication in the past twenty-four hours.  Ms. Voris then advised the court that she was satisfied that petitioner was both competent to plead guilty and guilty of the charge to which he was pleading.  The court then found petitioner to be competent in this matter.  Petitioner then advised the court that he was satisfied with his attorney.  The court then asked petitioner if he understood that he was entitled to a jury trial, that at such a jury trial petitioner is presumed to be innocent and that the government would have to prove

---

[2]The court only sets forth those aspects of the change of plea proceedings relevant to the claims made by petitioner in his Section 2255 motion.

petitioner guilty beyond a reasonable doubt, the United States
would have to call witnesses in his presence and that his
attorney could cross-examine those witnesses and object to
questions, that nobody could make petitioner take the stand and
testify against himself, that petitioner could take the stand and
testify on his own behalf, that the United States would have to
prove beyond a reasonable doubt that petitioner took money
belonging to a bank, that petitioner used force or intimidation
in doing so, and that the deposits of the bank were insured by
the Federal Deposit Insurance Corporation,  and that he
understood he was waiving his rights of appeal.  Petitioner
advised the court that he understood all of these rights and that
he wished to waive these rights and plead guilty.   The court
advised petitioner that the court could sentence petitioner, no
matter what anyone else may have told him, to up to 20 years in
prison, fine petitioner up to $250,000, or both the fine and
imprisonment, that restitution to the Bank of America must be
ordered, that the court could impose up to a three year term of
supervised release, that, if petitioner violated any of the terms
of supervised release, petitioner could be returned to prison for
the period of supervised release actually imposed or two years,
whichever is less, and that the court must impose a penalty
assessment of $100.  The following colloquy then occurred:

> THE COURT: ... Do you understand that the
> Court can sentence you, as I'm about to tell
> you, no matter what anybody else may have
> told you?  I can give you up to 20 years in
> prison.  I can fine you up to $250,000, or

1              both the fine and imprisonment.  I must give
you restitution to the Bank of America, 2513
2              Fresno Street, Fresno, California ... as may
be ordered by the Court.  That I can give you
3              up to three-year term of supervision.  And
should you violate any of the terms of your
4              supervision you could be returned to prison
for the period of supervised release actually
5              imposed by the Court, or two years, whichever
is less.  And I must give you a penalty
6              assessment of $100.  With all that in mind do
you still wish to plead guilty.

7

8              THE DEFENDANT: Yes.  I have a question.

9              THE COURT: Sir.

10             THE DEFENDANT: You said you could sentence me
up to 20 years even though I signed a plea
11             agreement?

12             THE COURT: Yes.  I'm not bound by that plea
agreement.  The Court will consider it; and I
13             will listen to arguments from the U.S.
Attorney's Office; I will listen to arguments
14             from your attorney; I will listen to comments
by yourself; and I will review the Probation
15             Report.

16             THE DEFENDANT: Okay.

17             THE COURT: But I promise you - I don't
promise you anything about what the Court
18             will do in sentencing other than those things
I explained to you.

19             THE DEFENDANT: Okay.

20             THE COURT: With that in mind, do you still
wish to plead guilty?
21

22             THE DEFENDANT: Yes.

AUSA Rice then read out the factual basis for the guilty plea.
23

24The court asked petitioner, reminding him that he was under oath,

25whether he robbed the bank and whether the facts set forth by

26AUSA Rice were true and correct, to which the petitioner

11

responded "yes".

Prior to sentencing, Ms. Voris filed objections to the Presentence Report in which she requested a two level downward departure based on petitioner's "diminished capacity at the time of the crime, his ongoing mental illness, and his isolation and denial of treatment during his incarceration at the Fresno County Jail." Ms. Voris repeated the request for a downward departure at sentencing, contending that

> the two level departure to 63 months is appropriate and acknowledges ... the fact of Mr. White's very serious mental illness and also the factor which was not taken into consideration, which is the fact that in the time of his incarceration, he has been in almost complete isolation. This is also based on the results of his mental illness and he has been in custody since July 25th, 2003.

> THE DEFENDANT: July 23.

> MS. VORIS: July 23rd, 2003. As far as I know, Your Honor, and I will show that I have the - Mr. White has given me copies of his various grievances and difficulties at the jail as they have come up. He has gone on two hunger strikes. He has called me with significant problems. We've addressed them. We got him finally his medical. He actually is receiving his medical for his illness, but did not for a very long time and without the intervention of the marshals, probably still would not. They let him out for about a day to be in a regular cell block before he could even unwrap his mattress, they had put him back in. I would ask the Court to take all these factors into consideration and give him two levels off for a resulting sentence of 63 months.

> ...

> THE COURT: Mr. White, is there anything you

12

1        wish to say in your own behalf, sir?

2        THE DEFENDANT: Yes, I would.  I just like to
         say I regret doing this crime that I did.  I
3        have a lot of remorse for it.  I wrote you a
         letter and I let you know that.  Even though
4        the case is stated by statute as a crime of
         violence, I never did any actual violence.  I
5        never intended to do any act.  And it was -
         when it got to that point to where I walked
6        up to the counter, it was just completely out
         of my control.  And I wasn't on my medical at
7        the time.  And the probation office, she
         misled me, but I'm basically here to deal
8        with my issue instead of her.  And I would
         appreciate it if you would give me this
9        downward departure because I never really
         been given a chance like this in my life and
10       I'm 37 years old right now.  And if you give
         me this six years, five months, whatever it
11       is, it would basically put me up there in the
         years and it would be harder for me to find
12       work.  I have mental issues.  I need a place
         to stay.  Within this time, I think if you
13       give me the downward departure, I think my
         family and my program - the drug program and
14       everything together will be enough to help me
         overcome my adversities and be a productive
15       citizen.

16  The court denied the requested departure.  Petitioner was

17  sentenced to 77 months, which was the low end of the guideline

18  range of 77 to 96 months.  No appeal was filed.

19       A.   Effect of Waiver in Plea Agreement.

20       As noted, pursuant to the Plea Agreement, petitioner waived

21  his right to collaterally attack his conviction and sentence.

22       The United States argues that this waiver precludes the

23  relief requested by petitioner.

24       However, the Ninth Circuit has recently held that a plea

25  agreement that waives the right to file a federal habeas petition

26  pursuant to 28 U.S.C. § 2254 is unenforceable with respect to a

13

1  claim of ineffective assistance of counsel that challenges the

2  voluntariness of the waiver.  <u>Washington v. Lambert</u>, 422 F.3d 864

3  (9th Cir. 2005).  In so holding, the Ninth Circuit cited with

4  approval decisions from other courts holding that, in the context

5  of § 2255 challenges brought by federal prisoners, waivers cannot

6  bar claims of ineffective assistance of counsel associated with

7  the negotiation of plea agreements or the voluntariness of the

8  plea agreement.  Consequently, to the extent that petitioner's

9  claims are based on ineffective assistance of counsel in

10 connection with the negotiation of the plea agreement and the

11 entry of the guilty plea pursuant to the plea agreement, the

12 court concludes that such claims are not barred by the terms of

13 the Plea Agreement.

14      There is another reason why the waiver in the Plea Agreement

15 does not bar petitioner's claims.  Rule 11(b)(1), Federal Rules

16 of Criminal Procedure, provides in pertinent part:

17          Before the court accepts a plea of guilty
            ..., the defendant may be placed under oath,
18          and the court must address the defendant
            personally in open court.  During this
19          address, the court must inform the defendant
            of, and determine that the defendant
20          understands, the following:

21          ...

22          (N) the terms of any plea-agreement
            provision waiving the right to appeal or to
23          collaterally attack the sentence.

24 Here, the transcript of the change of plea proceedings

25 establishes that the court asked petitioner if petitioner

26 understood that "you are waiving rights of appeal".  However, the

14

1  court did not ask petitioner if he understood that he was waiving

2  any right he may have to bring a post-conviction attack on his

3  conviction or sentence, including a motion under 28 U.S.C. §

4  2255.  Because the failure to question petitioner specifically

5  about the waiver of the right to file a post-conviction motion

6  collaterally attacking his conviction or sentence may constitute

7  plain error, see United States v. Arellano-Gallegos, 387 F.3d 794

8  (9th Cir. 2005), the court concludes that the waiver in the Plea

9  Agreement is unenforceable.

10      Therefore, the court concludes that the waiver of the right

11 to bring a Section 2255 motion set forth in the Plea Agreement

12 does not bar petitioner's claims.

13          1.  Ineffective Assistance of Counsel.

14      Claims asserting the ineffective assistance of counsel are

15 analyzed under the two-prong test announced in Strickland v.

16 Washington, 466 U.S. 668 (1984).  As explained in United States

17 v. Quintero-Barraza, 78 F.2d 1344, 1348 (9th Cir. 1995), cert.

18 denied, 519 U.S. 848 (1996):

19          According to Strickland, there are two
            components to an effectiveness inquiry, and
20          the petitioner bears the burden of
            establishing both ... First, the
21          representation must fall 'below an objective
            standard of reasonableness.' ... Courts
22          scrutinizing the reasonableness of an
            attorney's conduct must examine counsel's
23          'overall performance,' both before and at
            trial, and must be highly deferential to the
24          attorney's judgments ... In fact, there
            exists a 'strong presumption that counsel
25          "rendered adequate assistance and made all
            significant decisions in the exercise of
26          reasonable professional judgment."' ... In

                            15

> short, defendant must surmount the
> presumption that, 'under the circumstances,
> the challenged action "might be considered
> sound trial strategy."' ... Thus, the proper
> inquiry is 'whether, in light of all the
> circumstances, the identified acts or
> omissions were outside the wide range of
> professionally competent assistance.' ....
>
> If the petitioner satisfies the first prong,
> he must then establish that there is 'a
> reasonable probability that, but for
> counsel's unprofessional errors, the result
> would have been different ....'

Where a petitioner enters a guilty plea upon the advice of

counsel, the voluntariness of the plea depends upon whether the

petitioner received effective assistance of counsel.  In order to

prevail on an ineffective assistance of counsel claim, "the

[petitioner] must show that there is a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial."  Hill v. Lockhart,

474 U.S. 52, 56-57 (1985).

    Here, the transcript of the plea colloquy establishes that

petitioner was not misled by Ms. Voris as to the terms of the

Plea Agreement as asserted by petitioner.  Petitioner stated

under oath that he had read the Plea Agreement, that he

understood its terms, and that he was satisfied with his

counsel's representation.  Although petitioner now claims that

Ms. Voris misled him about his right to appeal and that he never

believed he was waiving his right to appeal, the specific terms

of the Plea Agreement belie that claim as does petitioner's

statement under oath that he understood he was giving up his

16

1   right to appeal and that he still wished to plead guilty even
2   though he was giving up his right to appeal.  Petitioner's claim
3   that he was medicated at the time he changed his plea also is
4   belied by his statement under oath that he had not taken any
5   medication during the twenty-four hours preceding the change of
6   plea.  Furthermore, there was nothing in petitioner's demeanor or
7   conduct during the change of plea proceedings which would have
8   caused the court to be concerned about petitioner's competence to
9   enter into the Plea Agreement and to plead guilty pursuant to the
10  terms of the Plea Agreement.  Finally, petitioner's motion makes
11  clear that he would not have pleaded guilty and would have
12  insisted on going to trial if petitioner's claims about Ms.
13  Voris' alleged ineffective representation were established.  It
14  is apparent from petitioner's motion that he hopes to be able to
15  enter into a conditional guilty plea to preserve his right of
16  appeal but will agree to a non-conditional guilty plea if he is
17  given the two-level downward departure previously requested by
18  Ms. Voris.

19       Therefore, the court concludes that petitioner is not
20  entitled to relief pursuant to Section 2255 to the extent that he
21  alleges that he entered into the Plea Agreement and changed his
22  plea because of the ineffective assistance of counsel.

23       Petitioner also appears to claim that he is entitled to
24  relief on the ground of ineffective assistance of counsel because
25  of Ms. Voris's failure to investigate petitioner's defense.
26  Petitioner contends that Ms. Voris failed to investigate whether

1  an employee of Twining Laboratories who, with a bank employee,

2  picked up a Visa Gold Card with petitioner's picture on it which

3  was outside the bank and gave the credit card to the police when

4  the police arrived was a possible suspect in the bank robbery.

5      Petitioner's claim is without merit.  The other physical

6  evidence connecting petitioner to the bank robbery as well as

7  eyewitness identifications of petitioner as the bank robber

8  negate any claim that Ms. Voris was constitutionally ineffective

9  by allegedly failing to investigate whether the Twining

10 Laboratories employee who picked up a credit card with

11 petitioner's picture on it outside the bank was the bank robber.

12 As noted supra, to succeed on a claim of ineffective assistance

13 of counsel, petitioner must demonstrate that Ms. Voris's failure

14 to investigate falls below an "objective standard of

15 reasonableness", Strickland, supra, 466 U.S. at 688, and

16 petitioner must demonstrate a "reasonable probability" that, but

17 for Ms. Voris's failure to investigate whether the Twining

18 Laboratories employee was the bank robber, the result of the

19 criminal proceedings against petitioner would have been

20 different.  Strickland, id. at 694.  "A reasonable probability is

21 a probability sufficient to undermine confidence in the outcome."

22 Id.  Petitioner has made no such showing with regard to this

23 claim.

24     Petitioner also bases his claim of ineffective assistance of

25 counsel on counsel's failure to investigate that the Visa photo

26 gold card with petitioner's picture on it "may have been

18

contaminated" and, therefore, inadmissible.

Petitioner has not established ineffective assistance of counsel on this ground.  Any defect in the chain of custody goes to the weight, not the admissibility of evidence.  <u>See</u> <u>United States v. Matta-Ballesteros</u>, 71 F.3d 754, 769 (9th Cir. 1995), <u>amended</u>, 98 F.3d 1100 (9th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1118 (1997).  Furthermore, petitioner points to nothing that would cast doubt on the integrity of the chain of custody of the Visa photo gold card making petitioner's allegation of contamination speculative.  Therefore, petitioner has failed to demonstrate prejudice and to rebut the strong presumption of attorney competence mandated by <u>Strickland</u>.[3]

2.  <u>Competence to Stand Trial</u>.

Petitioner also argues that he is entitled to relief pursuant to Section 2255 because he "was not cleared competent to stand trial by a doctor, at the time he signed his plea agreement, or after."

The record in this action, specifically a subpoena duces tecum obtained by Ms. Voris and a letter attached to the Presentence Report from Dr. Howard Terrell to Ms. Voris, and a

---

[3]In petitioner's reply brief filed on October 21, 2005, petitioner raises claims not previously asserted in his motion. These claims are that counsel was ineffective in failing to challenge the photo spread used by law enforcement for identification of the robber by the eye witnesses to the robbery, failure to challenge the descriptions of the robber given by eye witnesses, failure to challenge the fingerprint evidence, and failure to file pretrial motions.  Because these claims were raised for the first time in petitioner's reply brief, the court does not consider them in resolving petitioner's Section 2255 motion.

1   letter from Dr. Terrell to Ms. Voris attached to petitioner's

2   Section 2255 motion establish that Ms. Voris investigated the

3   issue of petitioner's competence prior to the execution of the

4   Plea Agreement and to the change of plea.  Therefore, petitioner

5   received effective assistance of counsel in connection with

6   investigation of petitioner's mental competence.

7       A defendant is entitled to a competence hearing "if there is

8   reasonable cause to believe that the defendant may presently be

9   suffering from a mental disease or defect rendering him mentally

10  incompetent to the extent that he is unable to understand the

11  nature and consequences of the proceedings against him or to

12  assist properly in his defense."  18 U.S.C. § 4241(a).  Here, the

13  record described above establishes that Dr. Terrell conducted a

14  forensic psychiatric evaluation of petitioner at the Fresno

15  County Jail on December 13, 2005.  In Dr. Terrell's report to Ms.

16  Voris dated December 24, 2003, a copy of which was provided to

17  the Probation Office and to the court at sentencing.  In the

18  December 24, 2003 report, Dr. Terrell states that petitioner

19  advised him that he has a long history of mental illness and has

20  been diagnosed with "organic delusional disorder", that he has

21  been prescribed with antipsychotic, antidepressant, and

22  antiseizure medications since the early 1990s, that he has been

23  receiving medication at the Fresno County Jail, that he began

24  experiencing auditory hallucinations in 1989, that, on the date

25  of the bank robbery, petitioner had been without his psychotropic

26  medications for a matter of months; that the voices were

20

bothering him and told him to go into the bank and see if he

could get another account; that, due to the voices, he went into

the bank and asked the teller how much it would cost to activate

an account; that he then saw a lot of money in the bank but that

he was not sure how much of the money was real as opposed to a

visual hallucination; that he was amazed at the amount of money

he saw and wrote a note to the teller telling her to give him the

money or he would hurt her; and that he was not under the

influence of drugs or alcohol at the time of the bank robbery.

Dr. Terrell's December 24, 2003 report further states:

**COURT**:

When asked the charges against him, he told
me he was charged with bank robbery.

When asked is this was a felony or
misdemeanor, he stated it was a felony.

When asked which is more serious, a felony or
misdemeanor, he stated that a felony was more
serious than a misdemeanor.

When asked what would happen if he is found
guilty of the current charges, he stated he
would receive about 12-15 years in federal
prison, however, he was not exactly sure how
long he would get.

When asked what would happen if a person is
found innocent, he stated they would let him
go.  The defendant told me that if he is
released, he would seek psychiatric
treatment.

When asked what would happen if he is found
not guilty by reason of insanity, he told me
‘*I'd go to a hospital.*’

**COURT OFFICIALS**:

When asked to name the officials in a court

21

> of law, he named the attorney, judge, prosecutor, and the police.
>
> When asked the function of his attorney, he replied, '*To make sure that I get a good defense.*'
>
> When asked the function of the judge, he replied, '*To sentence me.*'
>
> When asked the function of the police in the courtroom, he replied, '*To make sure the prosecutor puts me in prison.*'
>
> I asked if he knew the function of the court reporter.  He replied, '*The people that type. She's typin' everything that's said in court.*'
>
> When asked the function of the court room bailiff or marshals, he replied, '*Security.*'

Dr. Terrell's report states that petitioner told him that he started snorting cocaine in 1982 and then progressed to smoking crack cocaine; that he typically smokes two hits of crack cocaine per day; that he had been drug free for two to three months before the bank robbery; that he began smoking marijuana at the age of six; that he last used marijuana about three months before his arrest; that he typically consumed one joint of marijuana per day; that his alcohol consumption was approximately 40 ounces of malt liquor per day.  Dr. Terrell's December 24, 2003 report further states in pertinent part:

> **MENTAL STATUS EXAMINATION:**
>
> ***Appearance and behavior***: The subject is a well-developed, African-American male ... He was friendly and cooperative throughout the interview.  There was no evidence of thought blocking or tics.  Eye contact was fair.

22

***Orientation and perception***: He was alert and properly oriented to person, place and time. IQ appeared to be within the average to low-average range.

***Thought content and processes***: Associations were tight, coherent and relevant. There was no evidence of hallucinations or delusions. He denied any hallucinations on the date of interview but told me he last heard voices the day before this interview. When asked what the voices said, he told me, *'They say all kinda things! You're gonna be old when you get out! Your* [sic] *nothing!'*

**Reality Contact:** Good.

**Long and short-term memory:** Fair to good.

**Recall:** Excellent (able to recall 5 out of 5 items within 5 minutes).

**Interpretation of abstract thinking**: Excellent.

**Simple math:** Fair to good.

**Serial 7s:** Poor.

**General Information:** Fair to good.

**Judgment:** Fair.

**Insight:** Fair.

The subject denied any suicidal or homicidal ideation or intent.

***Affect and mood:*** Mood was euthymic [tranquil].  Affect was blunted but otherwise consistent with mood.

...

**DIAGNOSTIC IMPRESSION:**

**Psychotic Disorder NOS** (most likely due to severe head trauma in a motor vehicle accident of 1986).

**History of Seizure Disorder subsequent to head trauma in motor vehicle accident in**

1      **1986.**

2      **Cocaine abuse.**

3      **Cannibis abuse.**

4      **Personality Disorder NOS** (with antisocial
    features).

5

6      (Rule out Antisocial Personalilty Disorder).

7      ...

8      **COMMENT**:

9      Danny White has a reported history of severe
head injuries with seizure disorder and
10 subsequent development of auditory and visual
hallucinations.  At this point in time, I
11 have nothing to substantiate these claims
other than Mr. White's word.  I believe it
12 would be helpful if counsel could obtain his
prior psychiatric records from Vacaville
State Prison, the Fresno County Jail and any
13 other facilities that might have such
records.
14

15 With regards to the possibility of qualifying
for a downward departure, it should be noted
16 that individuals who suffer from psychotic
mental disorders (where they have long
episodes of losing contact with reality)
17 often will have difficulty in making sound
judgment and also will have difficulty with
18 impulse control.  In addition, individuals
who have seizure disorder and individuals
19 with psychotic mental disorder, often have
grave difficulty maintaining gainful
20 employment and have great difficulty
supporting themselves financially by gainful
21 employment.  It is my understanding that a
severe need for money was a factor in the
22 crime.  Mr. White's need for money was likely
based in large part upon his reported history
23 of epilepsy and psychotic mental disorder
that developed after his severe head injuries
24 in 1986.  As a result, I believe Mr. White
should be considered by the Court for a
25 downward departure due to his reported
history of epilepsy and chronic psychotic
26 mental illness.  I would recommend, however,

24

> that additional records be
> obtained/subpoenaed by counsel because at
> this point in time, I have nothing to support
> Mr. White's claims of epilepsy and chronic
> psychotic mental disorder other than his
> statements to me on December 13, 2003.

As noted, on January 8, 2004, Ms. Voris subpoenaed the Custodian

of Records for the California Department of Corrections for

production of "any and all parole records and records relating to

[petitioner's] incarceration with the California Department of

Corrections, specifically including records relating to any and

all medical and/or psychological/psychiatric care, diagnosis,

treatment and/or prognosis during the time he was incarcerated

and/or while he was on parole ...."  These records were produced

and provided to Dr. Terrell.  In a Supplemental Report to Ms.

Voris dated January 29, 2004, Dr. Terrell describes the

antipsychotic, antidepressant and antiseizure medications

prescribed to petitioner during 2003 and comments:

> The medical documents recently provided
> indicate that the subject has been receiving
> an **antipsychotic,** an **antidepressant** and an
> **antiseizure medication** at the Fresno County
> Jail.  This would be consistent with the
> history he gave me of suffering from
> recurrent seizures and mental disorder.

These reports do not establish "reasonable cause to believe

that the defendant may presently be suffering from a mental

disease or defect rendering him mentally incompetent to the

extent that he is unable to understand the nature and

consequences of the proceedings against him or to assist properly

in his defense."  Although Dr. Terrell's December 24, 2003 report

25

1   describes petitioner's history of seizures and mental illness,

2   Dr. Terrell's report also states that petitioner understood the

3   nature of the charges and the criminal proceedings against him,

4   that petitioner was alert, properly oriented, and that his

5   associations were "tight, coherent and relevant".  Petitioner

6   advised Dr. Terrell that he currently was taking his medications.

7   It is apparent that Ms. Voris, relying on Dr. Terrell's reports

8   believed that evidence of petitioner's mental condition did not

9   prevent him from being competent to stand trial or to plead

10  guilty but, rather, was evidence which could be presented to the

11  court for consideration at sentencing.  As noted, Ms. Voris

12  stated during the change of plea proceedings that she believed

13  petitioner to be competent.  Petitioner's conduct in the

14  courtroom during pretrial proceedings, the entry of the guilty

15  plea and sentencing did not raise any concern to the court that

16  petitioner's competence to stand trial or to enter a guilty plea

17  was at issue.

18      Therefore, the court concludes that petitioner has not

19  demonstrated that he was denied the effective assistance of

20  counsel because of counsel's failure to move for a competency

21  hearing pursuant to Section 4241(a) or that petitioner was

22  deprived of due process because of the court's failure to order a

23  competency hearing sua sponte.

24      Therefore, petitioner is not entitled to relief on this

25  ground.

26          3.   Failure of Court to Follow Requirement of

26

Disclosure in Open Court.

Petitioner contends that he is entitled to relief because "at the time the plea was offered, the court did not follow the requirement of disclosure in open court". Petitioner does not further describe the basis for this contention.

The court assumes that petitioner is attempting to assert that the court failed to comply with the requirements of Rule 11, Federal Rules of Civil Procedure. As discussed supra, the court did neglect to specifically advise petitioner that he was waiving his right to collaterally attack his conviction and sentence. However, because the court has considered all of the claims properly raised to this court in petitioner's Section 2255 motion, the court concludes that this error has been rectified.

As explained in United States v. Grewal, 825 F.2d 220, 222 (9th Cir. 1987):

> For a section 2255 movant to successfully challenge a guilty plea based upon a violation of Rule 11, he must establish that the violation amounted to a jurisdictional or constitutional error or that the violation resulted in a complete miscarriage of justice or in a proceeding inconsistent with the demands of fair procedure ... He must also establish that he was prejudiced in that he was unaware of the consequences of his plea, and, if properly advised, would not have pleaded guilty.

Because petitioner does not elaborate on his claim that "the court did not follow the requirement of disclosure in open court", petitioner has not made the showing required by Grewal. Therefore, petitioner is not entitled to relief on this ground.

27

1    Petitioner's suggestion in Ground Seven that the court
2  failed to advise petitioner of the constitutional rights he was
3  relinquishing by pleading guilty is belied by the plea colloquy
4  set forth above as well as by the terms of the Plea Agreement,
5  terms which petitioner stated under oath he had read and
6  understood.  Therefore, petitioner is not entitled to relief on
7  this ground.

8    ACCORDINGLY:

9    1.  Petitioner's motion to recall his motion to withdraw the
10 Section 2255 motion is granted.

11   2.  Petitioner's motion to vacate, set aside or correct
12 sentence pursuant to 28 U.S.C. § 2255 is denied.

13   3.  The Clerk of the Court is directed to enter judgment for
14 respondent.

15 IT IS SO ORDERED.

16 **Dated:  November 21, 2005**          **/s/ Robert E. Coyle**
   668554                        UNITED STATES DISTRICT JUDGE
17

18

19

20

21

22

23

24

25

26

28